UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| VERSUS | CRIMINAL ACTION |
| CARLOS W. WILLIAMS | NO. 08-173-JVP-SCR |

**RULING ON MOTION TO SUPPRESS**

In December 2008, defendant, Carlos W. Williams, was charged in a two-count indictment with possession of a firearm by a convicted felon and possession of marijuana (doc. 1). This matter is currently before the court on defendant's motion to suppress all items seized during searches of his person and vehicle subsequent to a July 11, 2008 traffic stop (doc. 15). The government opposes the motion (doc. 19). On April 27, 2009, an evidentiary hearing was held before United States District Judge James J. Brady, during which the following was adduced:

Baton Rouge Police Officer Michael Thompson testified that at approximately 12:00 p.m. on July 11, 2008, he conducted a traffic stop at the Brandywine Apartment Complex in Baton Rouge. Officer Thompson had been alone in his unit patrolling the complex when, upon exiting the parking lot, he observed a vehicle entering from Darryl Drive. Officer Thompson testified that from approximately "ten to twenty feet" away, it appeared that the driver (Mr. Williams) was not wearing a

1

seatbelt (though he believed defendant's passenger to be properly restrained). Officer Thompson then alerted Officer Dustin Johnson who was in a separate nearby unit.

Officer Thompson turned his unit around to follow defendant's vehicle. He testified that defendant then made an immediate right-hand turn and headed toward the complex's exit gate. Officer Thompson stated that he found this behavior odd, as defendant had just entered the complex. When defendant then took another right-hand turn out of the parking lot onto Darryl Drive, Officer Thompson testified that defendant failed to use his turn signal. The officer then activated his lights which, in turn, activated the unit's dashboard camera and the officer's microphone. The camera records all events occurring thirty seconds *prior* to activation of the lights.

By the time defendant's vehicle was stopped, Officer Johnson's unit was behind Officer Thompson's. After the stop, the dashboard video clearly depicts defendant removing his seatbelt (Officer Thompson speculated that defendant must have fastened his belt while the officer turned his unit around to follow defendant). Defendant exited the vehicle without prompting by the officer and was advised that he had been stopped for failure to wear his seatbelt and for failure to use a turn signal. Officer Thompson initially testified that defendant apologized for forgetting to wear his seatbelt.

In the meantime, Officer Johnson approached the passenger who was still

in the vehicle and noticed an open container of alcohol in plain view on the floorboard. Officer Thompson thereafter advised defendant of his rights and testified that defendant acknowledged his understanding of those rights. He testified further that, during the pat down, defendant advised that "he had a little bit of weed in his pocket." The officer discovered both marijuana and shotgun shells on defendant's person. Defendant then told Officer Thompson that there was a shotgun in the vehicle.

Defendant was arrested for possession of marijuana, handcuffed, and placed in the back of the unit. Officer Thompson later indicated that he was not necessarily going to book defendant for the possession of marijuana, but that coupled with the shotgun, that was the basis for arrest. Office Thompson then "called in" a criminal history and learned of a prior felony conviction for possession of cocaine. Defendant's passenger was issued a misdemeanor summons for the open container of alcohol and the vehicle was released to the passenger.

Defendant was booked and Officer Thompson prepared an arrest report, which was entered into evidence. Upon cross examination, counsel for the defendant noted what appeared to be an inconsistency between the arrest report and the officer's testimony. Though the report could be read to indicate that the officer observed defendant not wearing his seatbelt as he exited the parking lot, Officer Thompson insisted that he had observed the seatbelt violation as defendant entered the complex.

Defendant argues that all items seized during the search of the defendant's person and vehicle should be suppressed because the arresting officers had no valid reason to perform a traffic stop. In support of that argument, defendant contends that: (1) the dashboard camera video of the stop shows that defendant's seatbelt was visible and fastened at the time of the traffic stop; and (2) he did not violate La.R.S. 32:104 because he was not on a highway at the time he failed to signal his turn our of the parking lot.

## LAW AND DISCUSSION

In order to conduct a traffic stop, a police officer must have "probable cause to believe a traffic violation has occurred." *United States v. Cole*, 444 F.3d 688, 689 (5th Cir. 2006). The government bears the burden of establishing by a preponderance of the evidence that the stop was justified at its inception and that the Fourth Amendment intrusions were reasonably related in scope to the circumstance that justified the interference in the first place. See *United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003); *United States v. Riley*, 968 F.2d 433, 424-25 (5th Cir. 1992) ("Because a warrantless search is presumed to be unreasonable, the government has the burden of proving that the warrantless search was conducted pursuant to an exception.").

The government relies on the testimony and report of Officer Thompson to justify the traffic stop at its inception. However, during cross-examination, the video of the traffic stop was played and Officer Thompson noted that, at no point in the

video did he hear defendant apologize for forgetting to wear his seatbelt as was indicated in the police report. Officer Thompson also testified that he may have "mixed up" his recollection of the traffic stop with another traffic stop and thus may have mistakenly reported defendant as having apologized for not wearing the belt. He also testified that it is possible that he may have been mistaken regarding whether defendant was observed driving without a seatbelt at all.

The court, therefore, concludes that the government has failed to carry its burden of proving by a preponderance of the evidence that defendant was observed entering the parking lot without wearing a seat-belt.

The other stated reason for the traffic stop involved defendants "failure" to use a turn signal as his vehicle exited the parking lot onto the street. Officer Thompson's report indicates that he made the stop under the belief that defendant had violated LSA–R.S. 32:104, which provides in pertinent part:

> Whenever a person intends to make a right or let turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

LSA–R.S. 32:104(B).

The plain language of the statute imposes upon an individual the obligation to signal a turn only when that turn will "take his vehicle *from the highway it is then traveling*." The statute places no obligation on a driver to signal a turn while in a

private parking lot prior to turning onto a public road. See also, *Stephens v. Fuller*, 907 So.2d 917 (La.App. 2 Cir. 2005) (concluding that LSA–R.S. 32:104(A) does not apply to a driver's obligations while turning in a private parking lot). Thus, the court concludes that no violation of LSA–R.S. 32:104 occurred when defendant exited the parking lot without signaling his intent to turn onto Darryl Drive.

Moreover, the government cannot rely on Officer Thompson's good faith belief at the time that LSA–R.S. 32:104 had been violated. In *U.S. v. Cole*, 444 F.3d 688, 689, (5th Cir. 2006), the Fifth Circuit declined to apply a good faith exception to justify a stop where, in fact, no violation of law occurred, noting that:

> [I]f courts permitted officers to justify a stop based on their subjective belief that traffic laws have been violated when no violation has in fact occurred, the potential for abuse of traffic stops as pretext for effecting stops for other purposes "seems boundless and the costs to privacy rights excessive."

Accordingly, the court concludes that the government has failed to carry its burden of proving that the traffic stop was justified by the fact that defendant did not signal his intent to turn his vehicle upon exiting the parking lot.

Because the government has failed to carry its burden of establishing that the warrantless search and seizures were conducted pursuant to a recognized exception to the warrant requirement of the Fourth Amendment, the evidence obtained as a result of the traffic stop of July 11, 2008 is subject to suppression.

## CONCLUSION

For the foregoing reasons, the motion by defendant, Carlos W. Williams, to suppress all items seized during searches of his person and vehicle subsequent to the July 11, 2008 traffic stop (doc. 15) is hereby **GRANTED**.

Baton Rouge, Louisiana, ~~July~~ August 20, 2009.

                                                                          _____
                                                                          JAMES J. BRADY
                                                                          UNITED STATES DISTRICT JUDGE
                                                                          MIDDLE DISTRICT OF LOUISIANA